David B. Cassat v. Commissioner. Ruth Lyon Cassat v. Commissioner.
Cassat v. Commissioner
Docket Nos. 110533, 110534.
United States Tax Court
1944 Tax Ct. Memo LEXIS 160; 3 T.C.M. (CCH) 786; T.C.M. (RIA) 44250; July 31, 1944
*160 Curtis Bush, Esq., 906 Kahl Bldg., Davenport, Ia., for the petitioners. Gene W. Reardon, Esq., for the respondent. MELLOTT
Memorandum Opinion MELLOTT, Judge: These consolidated proceedings involve deficiencies in income tax for the year 1939 in the following amounts: Docket No.
Petitioner
Amount
110533
David B. Cassat
$147.89
110534
Ruth Lyon Cassat
186.14
[The Facts] All of the facts have been stipulated and are found accordingly. The sole issue is whether dividends paid by the Interstate Finance Corporation of Dubuque, Iowa, upon some of its common and preferred stock to trusts created by petitioners are includable in petitioners' gross incomes. Petitioners, sometimes hereinafter referred to as David and Ruth, are husband and wife and residents of Dubuque, Iowa. Each filed a separate return of income for the year 1939 with the collector of internal revenue at Des Moines, Iowa. On December 30, 1938, each of the petitioners created a trust. In each indenture it is stated that the settlor desires to place certain property in trust for the use and benefit of the settlor's spouse in order to provide for his (her) comfort and convenience during life and for *161 their children after death. Each indenture names the husband and wife as trustees but provides that Lyle M. Cassat, brother of David, shall become an additional trustee commencing with February 1, 1939. All of the trustees, including Lyle, accepted the trust. David transferred 158 shares of the seven percent cumulative preferred stock of the Interstate Finance Corporation and $4,200 in cash to the trust created by him. His trust indenture provides for the payment to his wife during her lifetime of a sum not exceeding $2,400 per annum. Ruth transferred 3,000 shares of the common stock of the Interstate Finance Corporation to the trust created by her. Her trust indenture provides for the payment to her husband during his lifetime of a sum not exceeding $7,500 per annum. In all material respects the provisions of the two trust indentures are identical. No effort will be made to make a complete summary of them. Each trust is irrevocable and cannot be altered or amended though each trustor may give or transfer additional property in trust to be held in such manner as may be directed. The quotations hereinafter set out are from the indenture executed by David. Paragraph 5, Subdivision *162 III reads as follows: "5. Except as hereinotherwise provided, during his lifetime and so long as he remains legally competent the said David B. Cassat, as a Trustee hereunder, shall exercise and be possessed of all of the discretionary powers of the Trustees herein and all matters concerning the management and investment of the property of this Trust, including the right and power to vote any and all corporate stocks belonging to this Trust, shall be determined and directed by him, as in his discretion he may consider advisable or advantageous to this Trust, and he shall not be limited in such investment to the classes of securities permitted by law for the investment of trust funds nor required to report to nor obtain the approval of any court therefor, and he shall have full power to at any time and in any way acquire, encumber, improve, or dispose of any securities or property in this Trust. In case the said David B. Cassat for any reason should become legally incompetent the remaining Trustees shall thereupon exercise all of the powers and duties of the Trustees for the duration of such legal incompetency. Except as hereinabove qualified and limited, during Trustor's lifetime *163 the Trustees shall exercise all of the powers and duties hereinafter provided to be exercised by them upon trustor's decease." Each trust provides that the settlor's spouse shall have power of appointment by will or other written instrument limited to the transferor's children or descendants of such children or spouses of such children or nieces or nephews of the transferor or spouse. Each provides that if none of the children of Ruth and David or their descendants survive the transferor and spouse, then, upon the death of both, the property remaining in the trust and all income and increment shall be paid to the heirs at law of the transferor and spouse in the same proportion as such heirs would be entitled had each owned an undivided one-half of the property and had they died simultaneously and intestate. The trusts are to terminate not later than 21 years after the death of the last survivor of the trustors and all beneficiaries who were living on the date the trusts were created. Paragraph 10 of each trust may be characterized as "spend-thrift" provisions, the essence being that neither principal nor income no accumulation "shall be liable in any manner in the possession of the *164 trustees for the debts, contracts, engagements, liabilities or obligations * * * of any of the beneficiaries." Paragraph 11 enumerates in extenso the powers of the trustees. They include the power to manage the trust property, to settle or compromise claims, to employ agents, to pay costs and expenses of management, to hold and lease real estate, to unite with other owners of property or securities similar to any held in trust in carrying out any plan for the liquidation or reorganization of a corporation whose securities may form a portion of the trust, and "(f) to invest any part or all of either the principal of or income from or increment to this Trust and its property in whatever classes of securities or property which they may select or to make loans thereof on such collateral or personal security as may be satisfactory to the Trustees, and without being limited or confined in any way to the classes of securities provided by law for the investment of trust funds or property and without being required to report to, nor obtain the approval of, any court." Under paragraph 21, the decision of a majority of the trustees shall prevail except as otherwise provided in paragraph *165 5 set out above. Paragraph 26 is as follows: "Wherever hereinabove the Trustees are vested with any discretionary powers, the exercise by the Trustees of such discretion shall be final and conclusive and no beneficiary shall have any right to contest or question the exercise of such discretion or to compel such discretion to be exercised in any particular manner, and the Trustees shall not be liable to any beneficiary by reason of the exercise of such discretionary powers." The trust indentures contain provisions for the subsequent appointment of a corporate trustee. After the appointment of a corporate trustee "the decision of the personal trustee who is other than Ruth Lyon Cassat shall fix and determine the amount of the * * * annuity payable to the said Ruth Lyon Cassat hereunder." During the settlor's lifetime Ruth has "no power as either trustee or annuitant to in any way control or determine the amount" to be paid to her as an annuity. The trustees "as may be determined by the trustees other than the said Ruth Lyon Cassat * * * shall, commencing with the first day of January, 1940, from the property of this trust, pay to the said annuitant an annuity in a sum not exceeding *166 $2,400 per annum payable so far as is practicable in substantially equal monthly installments". In the event that the annuitant shall predecease the trustor, then at the discretion of the trustees who are "neither appointee nor beneficiary hereunder" the property may be divided among the beneficiaries or retained by the trustees during the remainder of the trustor's lifetime and the income therefrom be paid to the appointee or beneficiary entitled to such share. At all times subsequent to the creation of the trusts the stock and cash transferred to them by the settlors has "been held by and in the possession of said trustees. The assets and funds of the two trusts have been kept separate and apart as such and separate accounts and records have been kept for all trust transactions." The Interstate Finance Corporation was incorporated February 11, 1925, under the laws of Iowa and it engages in the business of automobile and other financing in Dubuque, Iowa. and surrounding territory. During the years 1938 and 1939 David B. Cassat was its president and devoted all of his time to its business. He received compensation of $16,610.63 in 1938 and $11,917.21 in 1939. The chairman of its *167 board and its vice-president devoted part of their time to its business and each received a salary of $1,320 in 1938 and $1,200 in 1939. Its secretary-treasurer devoted all of his time to its business and received a salary of $4,400 in 1938 and $4,000 in 1939. None of the officers or directors is related to either petitioner. The capitalization of the Interstate Finance Corporation as of December 31, 1938 and 1939, was as follows: Common
1938
1938
19.400 shares par value $5 per
share
$97,000
$97,000
B-common
8,232 shares par value $5 per
share
41,160
41,160
5 1/2% Preferred
2,209 shares par value $10 per
share
220,900
2,436 shares par value $10 per
share
243,600
7% Preferred
1,728 shares par value $10 per
share
172,800
172,800 The common stock is the voting stock, the other classes having voting power "only upon any revision of its articles of incorporation." Prior to the execution of the trust indentures petitioners and the members of their family and relatives owned the following shares of stock of the Interstate Finance Corporation: Ruth
David B.
Lyon
Cassat
Cassat
Others
Total
Common
40
5,000
160
5,200
B-Common
5
250
68
323
5 1/2% Preferred
80
80
7% Preferred
158
20
178
*168 Each petitioner filed a gift tax return on March 13, 1939, reporting the transfers to the trustee. Donee's and trustee's information returns were filed at the same time. In 1939 the Interstate Finance Corporation paid dividends of $1,162 upon the 158 shares of 7 percent cumulative preferred stock transferred to the David B. Cassat trust, the dividends were received and accounted for by the trustees of this trust in their 1939 Federal income tax return (Fiduciary), and the trustees as such paid a Federal income tax of $42.48 thereon. In 1939 the Interstate Finance Corporation paid dividends of $3,000 upon the 3,000 shares of common stock which had been transferred to the Ruth Lyon Cassat trust, the dividends were received and accounted for by the trustees of this trust in their 1939 Federal income tax return (Fiduciary), and the trustees as such paid a Federal income tax of $116 thereon. In the Federal income tax returns for the year 1939 filed by each petitioner, neither included in gross income the dividends paid by the Interstate Finance Committee upon its stock. The Commissioner, in determining petitioners' income tax liabilities for the year 1939, included in David B. Cassat's *169 taxable income the dividends of $1,162 paid to the trust created by him and included in Ruth Lyon Cassat's taxable income the dividends of $3,000 paid to the trust created by her. The facts shown above differ but slightly from those before us in Herbert T. Cherry, 3 T.C. No. 1171. The trust indentures are in most respects identical. Under each the settlor, as trustee, has broad powers of management; but he cannot revest the corpus in himself, receive the income personally, use it to discharge his obligations, or accumulate it for future distribution to himself. Upon brief the same arguments are made and the same cases are cited as in the Cherry case. It would serve no useful purpose to repeat what was said in the opinion in that case. For the reasons therein set out we hold that the Commissioner erred in including the dividends in issue in the petitioners' gross incomes. Decision will be entered for the petitioner in Docket No. 110534. Decision will be entered under Rule 50 in Docket No. 110533.